### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| KAREN A. GARZA, | § | |
| PLAINTIFF, | § | |
| | § | |
| vs. | § | CIVIL NO. 4:20-CV-842-P |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of

the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Karen Garza ("Garza") filed this action pursuant to Sections 405(g) and 1383(c)(3)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying her claims for a period of disability and disability insurance benefits ("DIB")

under Title II. Garza protectively filed her application in October 2017 (Transcript ("Tr."), alleging

that her disability began on October 19, 2017. (Transcript ("Tr.") 9; *see* Tr. 152-53.) After her

application was denied initially and on reconsideration, Garza requested a hearing before an

administrative law judge ("ALJ"). (Tr. 9; *see* Tr. 50-77, 82-93.) The ALJ held a hearing on

November 26, 2019 and issued a decision on December 31, 2019 denying Garza's application for

1

benefits. (Tr. 6-49.) On June 23, 2020, the Appeals Council denied Garza's request for review, leaving the ALJ's December 31, 2019 decision as the final decision of the Commissioner. (Tr. 1-5.) Garza subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activities. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will

carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Garza presents the following issues:

1.  Whether there is substantial evidence to support the ALJ's residual functional capacity ("RFC") determination because the ALJ failed to properly evaluate the medical opinion evidence; and

2.  Whether the ALJ properly evaluated the Plaintiff's ability to return to her past relevant work at Step Four.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2, 9-15.)

## IV. ALJ DECISION

In his December 31, 2019 decision, the ALJ found that Garza had not engaged in any substantial gainful activity since October 19, 2017, her alleged onset date of disability and that she met the disability insured status requirements of the SSA through September 30, 2022. (Tr. 11.) At Step Two, the ALJ found that Garza suffered from the following "severe" impairments: "degenerative disc disease of the lumbar spine and cervical spine, history of carpal tunnel syndrome and cubital tunnel syndrome of the left upper extremity status-post surgery." (Tr. 11 (emphasis omitted).) At Step Three, the ALJ found that Garza did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 22-24.)

As to Garza's RFC, the ALJ stated:

The claimant has the residual functioning capacity to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, as well as sit 6-hours out of an 8-hour workday and stand/walk 4-hours out of an 8-hour workday. The claimant's ability to perform the full range of light work as defined in 20 CFR 404.1567 (b) is reduced by inability to climb ramps/stairs, balance, stoop (*i.e.,* bend at the waist), kneel, crouch (*i.e.,* bending at the knees), or crawl on more than an occasional basis and inability to ever climb ropes, ladders or scaffolds. The claimant is limited to

4

occasional overhead reaching with the bilateral upper extremities.

(Tr. 24 (emphasis omitted).)  Based upon this RFC assessment, the ALJ concluded that Garza was able to perform her past relevant work as in insurance clerk or graphic designer.  (Tr. 26.) Consequently the ALJ found that Garza was not disabled.  (Tr. 26.)

## V. DISCUSSION

### A. <u>RFC Determination</u>

As to her first issue, Garza argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinion evidence.  (Pl.'s Br. at 11.)  Specifically, Garza argues that the ALJ erred in finding that the opinions of Jeanine Thomas, D.O. ("Dr. Thomas"), Garza's treating primary care physician, were "lacking in persuasiveness" and that the opinion of Garza's nurse practitioner, Kamilah Jones ("NP Jones"), was "inconsistent with medical evidence."  (Pl.'s Br. at 10-11.)  In addition, Garza claims that the ALJ erred in finding that the opinion of Paul Patrick, M.D. ("Dr. Patrick") was persuasive and then failing to incorporate the limitations found by Dr. Patrick into the RFC determination.  (Pl.'s Br. at 10-13.) In support, Garza states:

> The Plaintiff submits that there is difficulty with the ALJ's evaluation of these medical opinions.  In rejecting the opinions of both the primary care physician and the nurse practitioner, the ALJ appears to have relied upon the fact that the Plaintiff reported some improvement upon implantation of the spinal cord stimulator.  The spinal cord stimulator was implanted on December 12, 2018.  The Plaintiff alleges that she has been disabled since October 19, 2017.  Assuming *arguendo* that after a reasonable recovery period from her surgery the Plaintiff had obtained significant, long-term relief as a result of implantation of the permanent spinal cord stimulator (an assumption which is inconsistent with the fact that the Plaintiff submitted to epidural steroid injections on April 10, 2019 and was found to continue to have moderate tenderness to palpation of the lumbar spine, positive straight leg raising at 30° and an antalgic gait on May 13, 2019), this leaves the period of October 2017 through December 2018 unaccounted for.  The ALJ has no basis for determining that the implantation of a spinal cord stimulator in December 2018 has any bearing upon

5

Ms. Garza's condition from the date of the alleged onset of disability until the stimulator was implanted. Thus, the ALJ has not provided specific reasons, connected to the evidence of record, for rejecting the opinions of the treating primary care physician and nurse practitioner.

The ALJ found Dr. Patrick's opinion to be persuasive and consistent with his examination of Ms. Garza. But Dr. Patrick opined that the Plaintiff can lift five pounds one time during the workday; stand for one hour; and can sit for one to two hours. Certainly, the ability to sit for one to two hours and to stand for one hour does not equal an 8-hour workday. Further, even if it is assumed that Dr. Patrick meant that she can sit for one to two hours *at a time*, the ALJ has no basis for determining that the jobs of insurance clerk and graphic designer, the jobs which the ALJ found that the Plaintiff could return to in his step 4 determination, would allow for the opportunity to alternate positions at the frequency described by Dr. Patrick, the consultative examiner. Certainly, the ability to lift only five pounds does not equate to an ability to perform light work.

Accordingly, having found that the opinion of Dr. Patrick is persuasive and consistent with his examination, the ALJ failed to incorporate the limitations described by Dr. Patrick into his residual functional capacity assessment. Further, the ALJ failed to provide reasons supported by the evidence for rejecting the medical opinions expressed by the treating primary care physician and the treating nurse practitioner. Hence, the ALJ failed to properly evaluate medical opinion evidence in determining the Plaintiff's RFC. Accordingly, the RFC determination is not supported by substantial evidence.

(Pl.'s Br. at 12-13 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[2] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial

---

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

7

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a medical source provides one or more medical opinions[4] or prior administrative medical findings,[5] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate. 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate

---

[4] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (I) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[5] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (I) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

how he considered each medical opinion or prior administrative medical findings from one medical source individually.  20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  20 C.F.R. § 404.1520c(a) (footnotes added).  "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'"  *Governor*, 2021 WL 1151580, at *7.  "Only *if the ALJ finds* that there are two or more medical opinions or prior administrative medical findings about the same issue that are both well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination."  *Id.*

In this case, the ALJ found, as stated above, that Garza had the RFC "to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, as well as sit 6-hours out of an 8-hour workday and stand/walk 4-hours out of an 8-hour workday."  (Tr. 24.)  The ALJ further reduced Garza's ability to perform the full range of light work[6] by finding that Garza could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl and never climb ropes, ladders. or

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining times." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983).

scaffolds. (Tr. 24. ) In addition, the ALJ limited Garza to occasional overhead reaching with the

bilateral upper extremities. (Tr. 24.) In making this RFC determination, the ALJ considered, *inter*

*alia*, the examination and treatment notes as well as opinions of multiple doctors, including Michael

Ramsey, M.D.; Daniel Fawcett, M.D.; Kimberly Washington, M.D.; Ayodele Osowo, M.D.; Jesse

Even, M.D.; Don Escarzega-Phan, M.D.; Carol Richardson, Ph.D.; Dr. Patrick; Troy Foster, D.O.;

Nikhil Patel, M.D; Dr. Thomas; NP Jones;[7] Randal Reid, M.D.; Cameron Atkinson, M.D.; and

Jacquelyn Perry, D.P.M. (Tr. 12-22.) As to Dr. Thomas and NP Jones and the weight given to

various other medical opinions, the ALJ stated, *inter alia*, the following:

> Treating physician, Jeanine Thomas, D.O., completed a Medical Assessment of
> Physical Ability to Perform Work Related Activities on January 8, 2017. Dr.
> Thomas found the claimant could sit 2 hours and stand/walk less than 2 hours. Dr.
> Thomas also noted that the claimant would need unscheduled breaks during an 8-
> hour workday. Dr. Thomas found the claimant could occasionally lift and carry less
> than 10 pounds. Dr. Thomas also found the claimant would have limitations in
> performing repetitive, reaching, handling or fingering. She estimated the claimant
> could do fine finger manipulation 50 percent of the day. Dr. Thomas found the
> claimant could never stoop, crouch, or climb ladders but could occasionally twist
> and climb stairs. Dr. Thomas submitted the same form on April 22, 2019 and
> September 19, 2019.
>
>         . . . .
>
> The claimant has had a favorable response to medication and an implanted
> spinal cord stimulator. She reports she is doing well. Her pain is less, and she is
> more active. I find Dr. Thomas' opinion lacking in persuasiveness.
>
> Consultative examiner, Dr. Patrick, found the claimant would be limited to
> sitting [f]or a moderate period of one to two hours, standing for a moderate time of
> one hour, walking a moderate distance of one mile, and lift five pounds one time. He
> noted that the claimant could use a cellphone and had prescription glasses but left
> them at home. Dr. Patrick noted that the claimant demonstrated using a tactile motor
> skills doll, that she could button buttons, zip a zipper, snap a snap, tie a bow and use

---

[7] From the medical records submitted, it appears that NP Jones worked with Dr. Thomas as both use the same
office address. (*Compare* Tr. 405 *with* Tr. 787.)

velcro.

The undersigned [ALJ] finds Dr. Patrick's opinion persuasive and consistent with his examination of the claimant.

Nurse Practitioner (NP), Kamilah Jones, submitted a Medical Opinion Questionnaire on September 10, 2019. NP Jones included hypothyroidism, hyper-cholesterol, depression, arthritis, radiculopathy, and type II diabetes. NP Jones found the claimant could sit no more than 2 hours and stand 1 hour. NP Jones found the claimant could stand/walk less than 2-hours out of an 8-hour workday and sit 2-hours out of an 8-hour workday. NP Jones noted that the claimant would need unscheduled breaks lasting 45 minutes to 1 hour. NP [J]ones found the claimant could occasionally lift less than 10 pounds. NP Jones found the claimant would have significant limitations in doing repetitive reaching, handling, and fingering. NP Jones found the claimant would be limited to 50 percent of an 8-hour workday to perform fine finger manipulated [sic] and would be limited to 5 percent of the day for using the arms for overhead reaching. NP Jones found the claimant would have to avoid extremes of cold/heat, high humidity, fumes, odors, dust, gases, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals. NP Jones found the claimant could  occasionally twist and climb stairs and never stoop (bend), crouch, and climb ladders.

. . . .

The undersigned [ALJ] finds NP Jones' assessment inconsistent with the medical evidence. The claimant told consultative examiner, Dr. Patrick, that she could walk a mile, stand for an hour, sit for an hour, as well as lift and carry up to 5 pounds. The claimant rated her joint pain 2 out of 10. The claimant stated that she could climb two flights of stairs. Since the consultative examination, the claimant has had implantation of spinal cord stimulator, which she states has been very effective in reducing the claimant's pain. As such, the undersigned does not find NP Jones's assessments persuasive.

State Agency medical consultant, Randal Reid, M.D., found on February 27, 2018 that the claimant could perform a reduced range of work at the light exertional level. Dr. Reid limited the claimant to occasional stooping (*i.e.*, bending at the waist), crouching (*i.e.*, bending at the knees), and crawling. He found the claimant to have unlimited ability to claim ramps/stairs, balance, and kneel.

State Agency medical consultant, Kim Rowlands, M.D., found on November 13, 2018 that the claimant could perform work at the light exertional level but would have to limit standing/walking to 4-hours out of an 8-hour workday. Dr. Rowlands found the claimant could occasionally balance, stoop, kneel, crouch, and crawl. She

found the claimant could never climb ropes/ladders/scaffolds and would be limited to occasional overhead reaching with the bilateral upper extremities.

The undersigned [ALJ] finds the State Agency medical consultant's assessments to be credible and consistent with the medical evidence.

(Tr. 23, 25-26 (internal citations omitted).)[8]

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart*, 2005 WL1994289, at *7 (5th Cir. Aug. 19, 2005). At issue here is the ALJ's treatment of the medical opinions of Dr. Thomas, NP Jones, and Dr. Patrick. In this case, there are several medical opinions that assess the effects of Garza's functional impairments on her ability to work. The ALJ, in making his RFC determination, dedicated multiple pages to considering and analyzing the medical and other evidence in the record. Moreover, the ALJ clearly relied on the opinions of the SAMCs, especially those made by SAMC Rowlands, in making his RFC determination. (Tr. 25-26; *see* Tr. 56-57, 71-73.) In addition, while finding the opinions of Dr. Thomas and NP Jones as "lacking in persuasiveness" or not persuasive, the ALJ actually did include some of their limitations in the RFC determination.[9] (Tr. 24-25.) Furthermore, while the ALJ found Dr. Patrick's opinions as "persuasive and consistent with his examination of the claimant," the ALJ was not required to

---

[8] The Court notes that pages 23 and 24 of the transcript are out of order as page 23 indicates it is page 16 of the ALJ's decision and page 24 indicates it is page 15 of the ALJ's decision. However, for ease of citation and reading, the Court will cite to the transcript in the order it appears.

[9] For example, Dr. Thomas found, *inter alia*, that Garza could occasionally climb stairs and never climb ladders, which were limitations incorporated by the ALJ into the RFC determination. (Tr. 23-24; *see* Tr. 405, 718, 787.) In addition, NP Jones found these same limitations. (Tr. 25; *see* Tr. 802.)

incorporate all of his opinions in the RFC determination as that determination is made by the ALJ. It is clear that the ALJ carefully considered all the medical opinions and medical evidence in the record in carefully formulating an RFC determination for Garza.

Even assuming, without deciding, that the ALJ was required to evaluate Dr. Thomas' and NP Jones' opinions using all five factors set forth in 20 C.F.R. § 404.1520c(c)(3), the Court finds that the ALJ did so. As to factors (c)(1) and (c)(2), which look at supportability and consistency, the ALJ noted that Dr. Thomas' opinions were lacking in persuasiveness because Garza had a favorable response to medication and an implanted spinal cord stimulator. (Tr. 25.) As to NP Jones' opinions, the ALJ found such assessment was inconsistent with the medical evidence, especially with what Garza had reported to Dr. Patrick, and that the implantation of the spinal cord simulator had been effective in reducing Garza's pain. (Tr. 25.)[10] As to factor (c)(3), which evaluates the relationship between the medical source and the claimant, the ALJ noted that Dr. Thomas was Garza's treating physician (Tr. 22) and analyzed multiple occasions when Dr. Thomas examined Garza, as well as several RFC assessments. (Tr. 15-25). As to NP Jones, the ALJ referenced NP Jones' September 10, 2019 physical RFC assessment as well as NP Jones' September 10, 2019 mental RFC assessment. (Tr. 25; *see* Tr. 800-02, 805-19. The mental RFC assessment indicated that NP Jones was Garza's "PCP" and that she had seen Garza every two to three months since June 2007. (Tr. 805.) As to factors (c)(4) and (c)(5), which looks at the specialization of the medical source and "other factors" such as familiarity with the other evidence, the ALJ noted that Dr. Thomas was

---

[10] While Garza did not like the reasons provided by the ALJ in finding Dr. Thomas and NP Jones' opinions as not persuasive, the Court notes that their opinions in January 2017 (Tr. 403-05 (Dr. Thomas)), April 2019 (Tr. 716-18 (Dr. Thomas)), and September 2019 (Tr. 785-87, 800-802 (NP Jones)) were very similar despite all the treatment and surgeries that occurred over this span of time that showed improvement in Garza's functioning.

Garza's treating physician and that NP Jones was a nurse practitioner and analyzed evidence from multiple other medical sources. (Tr. 17.)

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record, including the opinions of Dr. Thomas, NP Jones, and Dr. Patrick, to determine Garza's RFC. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence and exercised his responsibility as fact finder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. The ALJ properly weighed the opinions of Dr. Thomas, NP Jones, and Dr. Patrick against the other evidence and the record as a whole. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021) (internal quotations omitted). Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required.

### B. <u>Step Four: Ability to Return to Past Relevant Work</u>

In her brief, Garza also argues that the ALJ failed, at Step Four, to properly evaluate Garza's ability to return to her past relevant work. (Pl.'s Br. at 13).) In support of this argument, Garza states, *inter alia*:

> The ALJ maintained that Ms. Garza is capable of returning to her past relevant work as an insurance clerk and graphic designer. He reported that the vocational witness testified that a hypothetical individual of Plaintiff's age, education and previous work experience, who retained the residual functioning capacity which

14

the ALJ ultimately found, would be able to perform the occupations of insurance clerk and graphic designer as those occupations are customarily performed in the national economy.

No such testimony appears in the administrative record. The ALJ never posed a hypothetical question to the vocational witness which asked her to assume an individual with the RFC which the ALJ found to exist. Neither did the Plaintiff's representative at the hearing pose a hypothetical question which included the ALJ's ultimate RFC determination. Accordingly, the ALJ was mistaken in claiming that his determination is supported by vocational testimony.

(Pl.'s Br. at 13-14 (internal citations omitted).)

In her response, the Commissioner claims that, given the descriptions in the DOT, "[t]he ALJ properly concluded that Plaintiff was capable of performing her past relevant work as an insurance clerk and graphic designer and this work did not require the performance of work-related activities precluded by Plaintiff's RFC[, which involved] a modified range of light work." (Defendant's Brief ("Def.'s Br." at 9.) Defendant states that, while the Plaintiff is correct in her assertion that the ALJ never posed a hypothetical to the vocational expert ("VE") asking her to assume an individual with the RFC that the ALJ found to exist, the ALJ was not required to obtain VE testimony at Step Four so there was no error. (Def.'s Br. at 9.)

When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.") "The value of a vocational expert is that he is familiar with the specific

requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d, 129, 132 (5th Cir. 1995). At Step Four, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

During the November 26, 2019 hearing before the ALJ, the ALJ questioned VE Holly M. Jule, as follows:

> [ALJ:] Now Ms. Jule, do you have enough information to tell me what the claimant's past work was?
>
> [VE:] Yes.
>
> [ALJ:] Oh Okay, can you please tell me what her jobs were?
>
> [VE:] Yes, we have a few–
>
> [ALJ:] Looks like she had a few.
>
> [VE:] Yeah, we have three occupations. The first is an Insurance Clerk, that is DOT 249.362–
>
> [ALJ:] Okay what was it, start again.
>
> [VE:] The title?
>
> [ALJ:] Insurance Clerk, I had written at that [sic].
>
> [VE:] Correct. 249.
>
> [ALJ:] Okay, 249.
>
> [VE:] 362-014. This is a sedentary occupation, SVP 5.
>
> [ALJ:] Okay, what would be the second job?
>
> [VE:] We have a Training Instructor, this is DOT 166.221-010, this is a light occupation, SVP 8. It's actually performed at a sedentary level. And we have a Graphic Designer. This is DOT 141.

[ALJ:] All right, Graphic Designer?

[VE:] Mm-hmm. 141.061-018. This is a sedentary occupation, SVP 7.

[ALJ:] Okay.

[ALJ:] Counsel, do you challenge the credentials, cross-examination, hypotheticals, whatever you want to do within reason.

(Tr. 46-47.)

In evaluating Garza's ability to return to past relevant work the ALJ stated:

The claimant is capable of performing past relevant work as an insurance clerk and graphic designer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

In order to be considered past relevant work, the work must have occurred within the last fifteen years, lasted long enough for the individual to learn how to do it and have been at a level that would be considered substantial gainful activity. The claimant's earnings record as well as the information she provided in the Work History Report shows that she has past relevant work as a data entry clerk, machine operator and shipping and receiving manager.

According to the credible testimony of the impartial vocational expert, the claimant's past relevant work as an insurance clerk is sedentary, skilled work with a specific vocational preparation (SVP) of 5, as defined in the *Dictionary of Occupational Titles* under section 249.362-014, and her past relevant work as a graphic designer is sedentary, skilled work with an SVP of 7, as defined under section 141.061-018. The undersigned finds the Vocational Expert's testimony to be fully supported by the vocational evidence of record and generally consistent with the claimant's description of her work. Moreover, the undersigned finds that there is no conflict with the Vocational Expert's testimony and information provided in the *Dictionary of Occupational Titles*, 4th edition, rev. (1991). Ms. Jule testified that a hypothetical individual of the claimant's age, education and work experience who retained the capacity to perform the residual functional capacity set out above would be able to perform the occupations of insurance clerk and graphic designer, as those occupations are customarily performed in the national economy. The undersigned[,] therefore[,] concludes that the occupations of insurance clerk and graphic designer,

as customarily performed in the national economy, does not involve work-related functions precluded by the claimant's functional limitations.

(Tr. 26 (internal citations omitted) (emphasis omitted).)

After reviewing the arguments of the parties, the transcript of the hearing before the ALJ, and the ALJ's decision at Step Four, the Court concludes that the ALJ erred at Step Four in relying on the testimony of the VE without first setting forth a hypothetical question containing the limitations found in the RFC determination. While the Commissioner is correct that the ALJ is not required to use VE testimony at Step Four, "courts have held that when the ALJ elicits testimony from a VE, the use of the VE cannot be ignored and must be proper under the law." *Avalos v. Colvin*, No. EP-14-CV-97-ATB, 2016 WL 1583677, at *5 (W.D. Tex. Apr. 19, 2016).[11] In other words, "[a]lthough an ALJ may make a step four decision without a VE, in any case in which the ALJ calls a VE to testify, the hypothetical question must comport with the law." *Piccolella*, 2010 WL 1051045, at *4. There are two requirements for a hypothetical question posed to a VE: (1) it must incorporate

---

[11] *See Brenton K. F. v. Saul*, No. , 2020 WL 5801432, at *3 (N.D. Tex. Sept. 29, 2020) (finding that, while the ALJ is not required to use VE testimony at Step Four to determine whether claimant could return to past relevant work, if the ALJ chooses to rely on the VE's testimony at Step Four that reliance must be predicated on a hypothetical question that accurately reflects all of claimant's limitations); *Wells v. Berryhill*, No. 6:17-CV-28, 2018 WL 3621059, at *5 (S.D. Tex. Feb. 9, 2018) ("While it is true that the use of a VE is optional at Step 4 of the evaluation process, 20 C.F.R. § 404.1566(e), if an ALJ does rely on VE testimony based on a hypothetical question at Step 4, the hypothetical needs to be complete."); *Orosco v. Comm'r of Soc. Sec. Admin.*, 171 F. Supp. 3d 539, 544 (E.D. Tex. 2016) (finding reversible error since the ALJ relied significantly on the VE's testimony that Plaintiff could perform past relevant work at Step Four and that testimony was based on a defective hypothetical); *Piccolella v. Astrue*, No. 3:09-CV-696-M, 2010 WL 1051045, at *4 (N.D. Tex. Mar. 18, 2010) ("Although an ALJ may make a step four decision without a VE, in any case in which the ALJ calls a VE to testify, the hypothetical question must comport with the law."); *Glenn v. Massanari*, No. Civ.A. 3:01CV0576-D, 2001 WL 1135401, at *7 (N.D. Tex. Sept. 14, 2001) ("If the ALJ relied significantly on the VE's testimony for her determination that [claimant] could perform his past relevant work, her questioning of the VE, if it [was based on a flawed hypothetical question] . . ., is reversible."). *But see Moss v. Apfel*, No. 98-20215, 1999 WL 130146, at *1 (5th Cir. Feb. 12, 1999) (per curiam) (holding that VE testimony was not necessary when the ALJ determined that Plaintiff could perform his past relevant work and, therefore, the sufficiency of the hypothetical question was irrelevant); *Wells-Defleice v. Colvin*, No. 3:13-cv-1279-BH, 2014 WL 1670102, at *10 n.11 (N.D. Tex. Apr. 25, 2014) (holding that the ALJ's finding at Step Four was not erroneous even though it contravened VE testimony because a VE was not required at Step Four).

reasonably all disabilities recognized by the ALJ and (2) the ALJ must give the claimant or his representative the opportunity to correct any deficiencies in the question by suggesting defects. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In this case, the ALJ's sole basis for his decision that Garza could perform her past relevant work at Step Four was based on the testimony of the VE. (Tr. 26.) However, "the ALJ *never asked* the VE to determine if an individual of the claimant's age, education, work experience and residual functional capacity would be able to perform past relevant work like that which Plaintiff had performed." *Piccolella*, 2010 WL 1051045, at *4. Moreover, in his decision, the ALJ incorrectly stated that he had presented a hypothetical to the VE and that the VE, based on the nonexistent hypothetical, Garza's age, education, and work experience, testified that such a person would be able to perform the occupations of insurance clerk and graphic designer, as those occupations are customarily perform in the national economy. (Tr. 26.) Because the ALJ relied on VE testimony at Step Four that was not based on any hypothetical question, much less a proper one,[12] remand is required for the ALJ to reassess whether Garza can perform her past relevant work, either by eliciting from a VE a response to a complete hypothetical question or by basing his decision upon other substantial evidence.

---

[12] While the ALJ, at the hearing, did give Garza's representative a chance to cross-examine the VE, there was no hypothetical question presented to the VE that the representative could challenge.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings, conclusions, and recommendation.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 16, 2021**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and

the opposing party chooses to file a response, the response shall be file within seven (7) days of the

filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby

is returned to the docket for the United States District Judge.

SIGNED November 2, 2021.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE